PD-0716-15

IN THE COURT OF CRIMINAL APPEALS

OF TEXAS

RUTH PIN ROGMAD
*Appellant,*

*v.*

THE STATE OF TEXAS,
Appellee.

On Petition for Discretionary Review from the Second Court of Appeals in
Number 02-14-00075-CR
affirming the conviction in cause number CR12 0294
from the 415th District Court of Parker County, Texas

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ORAL ARGUMENT IS NOT REQUESTED

Judith Mattern Hearn
TBN. 00795504
20710 S. Hwy. 281
P. O. Box 156
Lipan, Texas 76462
Telephone: (254) 646-3700
Facsimile: (254) 646-3704
Counsel for Appellant

FILED IN
COURT OF CRIMINAL APPEALS

August 18, 2015

ABEL ACOSTA, CLERK

August 14, 2015

-1-

## IDENTITY OF THE PARTIES AND COUNSEL

1. Attorneys for the State (At Trial):

   Robert S. DuBoise and Abigail Placke
   Assistant District Attorneys
   Parker County, Texas
   117 For Worth Highway
   Weatherford, Texas 76086

2. Attorneys for the State (On Appeal):

   Don Schnebly, District Attorney
   Edward D. Lewallen, Assistant District Attorney
   Parker County, Texas
   117 Fort Worth Highway
   Weatherford, Texas 76086

3. Attorney for Appellant (At Trial):

   Judith Mattern Hearn
   Attorney at Law
   20710 S. Hwy. 281
   P. O. Box 156
   Lipan, Texas 76462

4. Attorney for Appellant (On Appeal):

   David L. Richards
   Attorney at Law
   3001 West Fifth Street, Ste. 800
   Fort Worth, Texas 76107

5. Attorney for the State (On Petition for Discretionary Review)

Don Schnebly, District Attorney
Edward D. Lewallen, Assistant District Attorney
Parker County, Texas
117 Fort Worth Highway
Weatherford, Texas 76086

6. Attorney for Appellant (On Petition for Discretionary Review)

Judith Mattern Hearn
Attorney at Law
20710 S. Hwy. 281
P. O. Box 156
Lipan, Texas 76462

7. Presiding Judge (Trial Court)

The Honorable Graham Quisenberry
415th Judicial District
Parker County, Texas

8. Appellant:

Ruth Pin Rogmad

# TABLE OF CONTENTS

## Contents

INDEX OF AUTHORITIES .................................................................................................5

STATEMENT OF THE CASE ...........................................................................................6

STATEMENT OF PROCEDURAL HISTORY ....................................................................6

GROUNDS FOR REVIEW ...............................................................................................7

REASONS FOR REVIEW ................................................................................................7

    *Other Reasons:* ........................................................................................................8

FACTUAL BACKGROUND RELATIVE TO THESE ISSUES............................................8

    THE SECOND COURT OF APPEALS ERRED IN ITS APPLICATION OF THE LAW TO THE FACTS WHEN IT FAILED TO DO A *DE NOVO* REVIEW OF WHETHER REASONABLE SUSPICION AND PROBABLE CAUSE EXISTED, A MIXED QUESTION OF LAW AND FACT, WHEN DEPUTY HAMILTON CONDUCTED A TRAFFIC STOP OF JONES, IN ROGMAD'S CAR AT THE ARMOUR STORAGE FACILITY LOCATED AT 1139 FORT WORTH HIGHWAY, WEATHERFORD, TEXAS BASED ON AN INFORMANT'S TIP........................................10

    Analysis.......................................................................................................................11

WHETHER THE SECOND COURT OF APPEALS ERRED WHEN IT FAILED TO DO A *DE NOVO* REVIEW OF THE MIXED QUESTIONS OF LAW AND OF FACT SURROUNDING WHETHER DEPUTY HAMILTON AND INVESTIGATOR NEGRETE WERE REASONABLE IN FINDING JONES HAD THE AUTHORITY TO CONSENT AND SUBSEQUENTLY, THE REVIEW OF THE SEQUENCE OF EVENTS WHERE THAT CONSENT WAS WITHDRAWN DURING THE SEARCH OF ROGMAD'S LOCKED STORAGE UNIT, AND LOCKED SAFE. ...........18

    Analysis.......................................................................................................................20

PRAYER FOR RELIEF ...................................................................................................23

CERTIFICATE OF SERVICE...........................................................................................23

CERTIFICATE OF COMPLIANCE ..................................................................................24

# INDEX OF AUTHORITIES

## Cases

.Brinegar v. United States, 338 U.S. 160, 183 (1949)............................................................................15

.United States v. Matlock, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974).....................................19

Alabama v. White, 496 U.S. 325, 329, 110 L.Ed. 2d 301, 110 S.Ct. 2412 (1990)...........................13,15,16

Alabama v. White, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990) ...........................13, 16

Berger v. New York, 388 U.S. 41, 53, 87 S. Ct. 1873, 18 L. Ed. 2d 1040 (1967 .....................................18

Brendlin v. California, 551 U.S. 249, 255-259, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007 ......................11

Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) .................................................................13

Georgia v. Randolph, 547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208, 2006 U.S. LEXIS 2498, 74 U.S.L.W. 41776, 19 Fla. L. Weekly Fed. S. 138..................................................................................................19

Guzman v. State, 955 S.W.2d 85, 87, 1997 Tex. Crim. App. LEXIS 72, *6-8 (Tex. Crim. App. 1997) ................10, 17

Illinois v. Gates, 462 U.S. 213, 235, 103 S. Ct. 2317, 76 L. Ed. 257..........................................................16

Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) .....................................18

Limon v. State, 314 S.W.3d 694, 2010 Tex. App.  LEXIS 4565 (Tex. App. Corpus Chrisiti 2010) pet granted No. PD-1320-10, 2010 Tex. Crim. App. LEXIS 1619 (Tex. Crim. App. Dec. 8, 2010), rev'd, 340 S.W.3d 753, 2011 Tex. Crim. App. LEXIS 830)........................................................................................................21

Limon v. State, 314 S.W.3d 694, 2010 Tex. App.  LEXIS 4565 (Tex. App. Corpus Chrisiti 2010) pet granted No. PD-1320-10, 2010 Tex. Crim. App. LEXIS 1619 (Tex. Crim. App. Dec. 8, 2010), rev'd, 340 S.W.3d 753, 2011 Tex. Crim. App. LEXIS 830)........................................................................................................19

Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) .................................................................18

Ornelas v. United States, 517 U.S.  690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) ..................................10

Pullman-Standard v. Swint, 456 U.S. 273, 289, n. 19, 102 S. Ct. 1781, 72 L. Ed. 2d 66 (1982 .....................11

Rodriguez, 497 U.S. at 188, 110 S.Ct. 2793, 111 L.Ed. 2d 148 (1990)......................................................19

Stewart v. State, 22 S.W.3d 646, 648 (Tex. App.—Austin, 2000, pet. ref'd ................................................16

Terry v. Ohio, 392 U.S. 1, 30 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968 .......................................................12

Tucker v. State, 369 S.W.3d 179 (Tex. Crim. App. 2012).........................................................................19

United States v. Matlock, 415 U.S. 164, 171 n.7, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974)............................18

Valdez v. State, 336 S.W.3d 330, 335, 2010 Tex. App. LEXIS 9881, *11 (Tex. App. San Antonio 2010) .................18

Welch v. State, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002).......................................................................18

Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).....................................................................12

Woods, 956 S.W.2d at 38 ....................................................................................................................13

## Statutes

Tex. Code of Crim. Proc. Ann. Art. 38.23. ..............................................................................................8

Tex. TN. Code Ann. §544.010 ...................................................................................12

**Rules**

Tex. R. App. P. 66.3(c) and (f): ..................................................................................7
*Tex. R. App. P. 66.3(c)*.............................................................................................7

**Constitutional Provisions**

4th 8
Tex. Const. Art. I, §9................................................................................................8

## STATEMENT OF THE CASE

This is an appeal from a felony conviction for the offense of possession of marihuana of more than four ounces but less than five pounds. Appellant, Ruth Pin Rogmad, was indicted for the said offense in the 415th Judicial District Court of Parker County, Texas, in cause number CR12-0294 on June 7, 2012. (C.R. P. 4). At trial held on January 27-28, 2014, a jury found Appellant "guilty" of the offense and assessed her punishment at twenty-four months' confinement in a state jail facility with a $10,000 fine. (C.R. pp. 5-7, 9-16; R.R. V, pp. 152-53; R.R. VI, p. 50). Appellant appealed from this conviction.

### STATEMENT OF PROCEDURAL HISTORY

On May 14, 2015, 2015, in an unpublished opinion, the Second Court of Appeals affirmed Rogmad's conviction. Rogmad v. *State*, No. 02-14-0075-CR. No motion for rehearing was filed.

## GROUNDS FOR REVIEW

a)  The Court of appeals did not conduct a de novo review whether reasonable suspicion and probable cause existed, a mixed question of law and fact, when Deputy Hamilton conducted a traffic stop of Jones in Rogmad's car at the Armour Storage Facility located at 1139 Fort Worth Highway, Weatherford, Parker County, Texas, based on an informant's tip.

b)  The Court of appeals did not conduct a de novo review of the mixed questions of law and of fact surrounding whether Deputy Hamilton and Investigator Negrete were reasonable in finding Jones had authority to consent and subsequently, the review of the sequence of events where that consent was withdrawn during the search of Rogmad's locked storage unit and locked safe.

c)  The Court of Appeals review of the facts and the application of the rule of law was not correctly applied given the events as recorded by the video/audio tape admitted during the hearing on the motion to suppress. The video and audio tape are relevant evidence and should have been considered, as the tape does not support the legal basis upon which the Second Court of Appeals has based their opinion; there is no evidence that the Court of Appeals reviewed the video tape that was admitted into evidence and therefore, cannot have considered the "totality of the circumstances" in completing their review.

## REASONS FOR REVIEW

The Second Court of Appeals erred in affirming the trial court's granting of the motion to suppress. The Second Court of Appeals' decision should be reviewed by the Court of Criminal Appeals under Tex. R. App. P. 66.3(c) and (f):

c)      The court of appeals decided an important question of state or federal law in

conflict with the applicable decisions of the Court of Criminal Appeals or the

-7-

United States Supreme Court.  *Tex. R. App. P. 66.3(c).*

f)  *whether a court of appeals has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the Court of Criminal Appeals' power of supervision.*

### Other Reasons:

1) Whether the Second Court of Appeals should have considered the entire issue of consent, including whether Jones had the authority to give any consent and whether that consent was tainted by law enforcement's actions? Law enforcement entered the storage unit, and then the locked safe, without a warrant, but with "alleged" consent by Rogmad's boyfriend, Jones. Law Enforcement may have embarked on a chain of causation that was unlawful, thus creating a taint that was not removed under the Attenuation Doctrine.

Counsel believes the Second Court of appeals has misconstrued a statute, or rule of law that has substantially effected the constitutional rights of Rogmad under the 4th and 14th Amendment to the United States Constitution, under Tex. Const. Art. I, §9 of the Constitution for the State of Texas, and under the Tex. Code of Crim. Proc. Ann. Art. 38.23.

### FACTUAL BACKGROUND RELATIVE TO THESE ISSUES

On appeal, the issues presented on Rogmad's behalf regarded the pre-trial suppression hearing, and the trial court's denial of Rogmad's motion or new trial.

During the hearing on Rogmad's motion to suppress, the State presented the testimony of three law enforcement officers: Deputy Rodney Hamilton, (R.R. II, pp. 5-41) Investigator Christopher Negrete (R.R. II, pp. 41-59 and Officer Luis Montanez. (R.R. II, pp . 60-81). Investigator Negrete actually conducted the search and discovered the contraband at issue. (R.R. II, p. 16).

Hamilton testified that after pulling over the suspect vehicle and detaining its driver, Mr. Pierre Jones, appellant's boyfriend, in front of the storage unit at issue, he asked for and received consent to search the unit from Jones (R.R. II, pp. 7-15). Jones informed the deputy that he was at the storage facility "to put some vehicle parts in his wife or girlfriend's storage building." *Id.* At 14. Investigator Negrete, then obtained the key to the unit from the ignition keys to the vehicle Jones was driving and opened the storage unit. Id. At 15-16. The storage had boxes and a portable safe (R.R. II pp. 16-18, 33). Hamilton stated at no point up until this time did. Jones, watching the search, ever withdraw his consent to search the storage unit or the contents. Id. at 18.

The "in-car video" of this entire encounter with Jones was admitted (R.R. II, p. 20) and played for the trial court. Id. at 21-22; State's Exhibit One. Hamilton again testified that Jones had never denied consent to search to the deputies (R.R. II, p. 22).

The Second Court of Appeals found that Jones did not withdraw his consent until after Officer Negrete had opened the safe and had discovered the marijuana. At that point,

-9-

the withdrawal came too late, at least as to the admissibility of the marijuana at trial.

Consequently the Court of Appeals held that the trial court did not err by denying Rogmad's

motion to suppress and her first point was overruled. (Appendix A – Memorandum Opinion).

State's Exhibit Number One is important because there are a number of

discrepancies between the officers' testimony and audio and video tape that represents

Deputy Hamilton's in-car video and audio recording at the time of the traffic stop, which was

admitted as State's Exhibit Number One (R.R. II, pp. 20).  This evidence questions  whether

law enforcement embarked on a chain of causation that was unlawful, thus creating a taint

that was not removed under the Attenuation Doctrine, and in violation of Rogmad's rights

under the $4^{th,}$ 5th, 6th,  and 14th Amendment to the United States Constitution under Tex.

Const. Art. I, §s 9, 10, 14, 19,  of the Constitution for the State of Texas,  and under the Tex.

Code of Crim. Proc. Ann. Art. 38.23.

## THE SECOND COURT OF APPEALS ERRED IN ITS APPLICATION OF THE LAW TO THE FACTS WHEN IT FAILED TO DO A *DE NOVO* REVIEW OF WHETHER REASONABLE SUSPICION AND PROBABLE CAUSE  EXISTED, A MIXED QUESTION OF LAW AND FACT,  WHEN DEPUTY HAMILTON CONDUCTED A TRAFFIC STOP OF JONES, IN ROGMAD'S CAR AT THE ARMOUR STORAGE FACILITY LOCATED AT 1139 FORT WORTH HIGHWAY, WEATHERFORD, TEXAS BASED ON AN INFORMANT'S TIP.

Although great weight should be given to the inferences drawn by the trial judges

and law enforcement officers, determinations of reasonable suspicion and probable cause

should be reviewed *de novo* on appeal. *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). The Court stated, "the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles." *Ornelas*, 116 S. Ct. at 1662, citing *Miller*, 474 U.S. at 114, cited in *Guzman v. State*, 955 S.W.2d 85, 87, 1997 Tex. Crim. App. LEXIS 72, *6-8 (Tex. Crim. App. 1997).

The Court went on to describe this kind of determination as "a mixed question of law and fact:" "[T]he issue is whether the facts satisfy the [relevant]statutory [or constitutional] standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." *Id.*, at 696-697, 116 S.Ct. 1657, 134 L. Ed. 2d 911 (*quoting Pullman-Standard v. Swint*, 456 U.S. 273, 289, n. 19, 102 S. Ct. 1781, 72 L. Ed. 2d 66 (1982). What matters, said the Court, are the facts as viewed by an objectively reasonable officer, and the rule of law – not an officer's conception of the rule of law, and not even an officer's reasonable misunderstanding about the law, but the law.

## Analysis

A traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment. *Brendlin* v. *California*, 551 U.S. 249, 255-259, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). All

parties agree that to justify this type of seizure, officers need only [4] "reasonable

suspicion"—that is, "a particularized and objective basis for suspecting the particular person

stopped" of breaking the law. *Prado Navarette* v. *California*, 572 U.S. ___, ___, 134 S. Ct.

1683, 1688, 188 L. Ed. 2d 680, 686 (2014) (internal quotation marks omitted). Such a

seizure comports with the Constitution only if the officers had articulable and reasonable

suspicion that Jones was breaking the law.

Hamilton testified Jones ran a stop sign(R.R. II, p. 10). This is a violation of Tex. TN.

Code Ann. §544.010. Hamilton exited his unit with his weapon pulled, pointing it at Jones,

and gave him commands for Jones to drop his keys, show his hands, get out of the car,

and get on his stomach. (R.R. II, pp. 10-11). Hamilton believed Jones was trying to run

from him (State's Exhibit Number One at 2:06, 2:42, 2:43: 2:44) (R.R. II, p. 11, R.R. III, p.

25). During this "evasion, "Jones traveled approximately .25 or less of a mile (R.R. IV, p.

24), does not exceed the speed limit (R.R. III, p. 51) signaled his right turn into the storage

facility when he entered the facility (State's Exhibit Number One at 2:00) and a left turn to

go to the storage unit (*Id.* at 2:13), turned into a gated (R.R. V, p. 113) and fenced (R.R III,

p.115), facility. Jones told Hamilton that he did not see him, (State's Exhibit Number One

at 2:57, 3:00, and (R.R. IV, pp. 27).

Hamilton agreed that Jones was handcuffed within one minute into the stop (R.R.

III, p. 52), and further agreed that he has no right to detain anybody unless he is

-12-

investigating something (R.R. III, p. 51). A police officer may stop and briefly detain a person for investigative purposes if the officer, in light of his experience, has a reasonable suspicion supported by specific articulable facts that the person detained is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

Hamilton searches the car for over 25 minutes, including the trunk, opened by Jones (R. R. IV p. 41, and State's Exhibit Number One at 15:51). The search reveals a gallon baggie is located with a corner cut, and marihuana residue (R.R. II, p. 13 and R.R. IV, p. 31) and (State's Exhibit Number One at 15:57). Hamilton finds nothing that would reflect "burnt marihuana," and 25 minutes into the traffic stop, he is heard on his cell phone, saying:

> Hello, Hey Bubba. Hey, I am not finding anything in the vehicle. No, not unless he's got it up his ass. He has shorts on. I patted him down real good. I'll do it again when I get back over there. I haven't asked him on the building. He was kind of uh... that's what I am thinking. It may be where it is at because he was kind of when I asked him which one is your he goes "well it is over here. I said there is a whole building there. Which one is it and he said it is either 210 or 211, but it is my girlfriend's and this is the first time I have been over here without her and....Ruth....Ruth something (can hear the word "Rogmad) Yeah, OK, Bye. (State's Exhibit Number One 26:16 to 27:22).

A reasonable suspicion means more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). The reasonableness of a detention must be examined in terms of the totality of the circumstances *Woods*, 956 S.W.2d at 38. An anonymous tip or telephone call may justify the initiation of an investigation, but will

-13-

alone rarely establish the level of suspicion required to justify a detention. *Alabama v. White*, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990); *Stewart v. State*, 22 S.W.3d 646, 648 (Tex. App.—Austin, 2000, pet. ref'd). Normally, a police officer must have additional facts before the officer may reasonably conclude that the tip is reliable and in an investigatory detention is justified. *Stewart*, 22 S.W.3d at 648. An officer's prior knowledge and experience, and his corroboration of the details of the tip may be considered in giving the anonymous tip the weight it deserves *Id.*

Four minutes into the stop, Hamilton is asking Jones "which one is your storage locker?" (State's Exhibit Number One at 4:32) to which Jones replies "I don't have a storage – it's not mine, it's hers." And Hamilton says "OK, which one is her storage?"( *Id.* at 4:33-4:37). Shortly after Hamilton asks which is the girlfriend's storage (*Id.*), Negrete gets keys from Hamilton and opens the padlock on Rogmad's storage (*Id.* at 6:36) prior to any consent to search or search of the car. Jones gave consent to search the vehicle (*Id.* at 5:31 and at 6:56 )and then, following Hamilton's question to Negrete "will it work" Negrete nods affirmatively (*Id.* at 6:37). Hamilton then smells burnt marihuana (*Id.* at 6:56). At trial, Hamilton agreed that the sunroof of the vehicle was open, the windows were down, and further agreed that residue does not usually create a burnt smell of marihuana (R.R. III, p. 53).

This is not a reasonable detention under the totality of the circumstances and was not reasonable because, first, the video does not support Hamilton's assertion that Jones ran the stop sign. The camera is on, but it is not pointed at the stop sign. (State's Exhibit One). Jones was detained, in handcuffs for over 40 minutes and was never told he had the right to refuse consent (State's Exhibit Number One). Second, in view of the first 27:22 minutes of the traffic stop on Pierre Jones, Rogmad contends that any reasonable suspicion that the officers may have had at the initiation of the stop for the traffic violation ended when Hamilton said "I am not finding anything in the vehicle." (State's Exhibit Number One at 26:16 thru 27:22).

These are the circumstances that laid the basis for the search of Rogmad's storage locker and safe from the record, and the in-car video. The Fourth Amendment governs all intrusions by agents of the public upon personal security; the scope of the particular intrusion, in light of all the exigencies of the case, is a central element in the analysis of reasonableness. *Brinegar v. United States*, 338 U.S. 160, 183 (1949) (Mr. Justice Jackson dissenting). It would appear that the jump from the vehicle to the storage locker could not then be based on the informant's tip, because according to Negrete, this traffic stop was initiated based on the tip of an informant, who provided general information that "a subject was going to be leaving a residence to deliver marijuana and the subject would be driving a

vehicle from the said residence to Big Pantry, the convenience store on Ranger Highway or 180." (R.R. II, p. 43).

To detain someone based on "a subject" leaving "a residence" taking marihuana to the Big Pantry on the Ranger highway," is vague, so the traffic stop was an excuse to try to determine if there was a delivery of marihuana taking place. The Court in *Alabama* held that an anonymous tip or telephone call may justify the initiation of an investigation, but will alone rarely establish the level of suspicion required to justify a detention. *Alabama v. White*, 496 U.S. 325, 329, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990); *Stewart v. State*, 22 S.W.3d 646, 648 (Tex. App.—Austin, 2000, *pet. ref'd*).

Negrete testified that he did not believe Jones when Jones told Hamilton he was there to put car parts in storage, and that is why Negrete took the key from Hamilton and opened the padlock (R.R. II, p. 46, 47). Negrete was surprised when the key worked, and he admitted that he unlocked the padlock (R.R. II, p. 47).

The standard for review for probable cause also looks to the totality of the circumstances. In testing whether an officer has probable cause to conduct a search, all that is required is the kind of "fair probability" on which "reasonable and prudent people act." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S. Ct. 2317, 76 L. Ed. 257. To evaluate whether the State has met this practical and common-sensical standard, this court has consistently

looked to the totality of the circumstances and rejected rigid rules, bright-line tests, and mechanistic inquiries.

Does the totality of the circumstances reflect that probable cause existed to jump from a traffic stop to search the locked storage unit, based on the general information received by an informant, and residue? Negrete stated that the storage unit was not what they were expecting (R.R. II, p. 46), and they thought Jones was trying to hide from them (Id.). However, during the stop, the in-car video picks up the name "Rogmad" at 21:21, and then her name is spelled out "R-O-G-M-A-D." (State's Exhibit Number One at 21:21-21:45).

Rogmad submits that probable cause to enter her locked storage and locked safe were not established by law enforcement under the totality of the circumstances presented at Rogmad's hearing on her motion to suppress and respectfully requests the court to remand this matter back to the second court of appeals for de novo on the mixed issues of fact and of law on reasonable suspicion and probable cause because the appellate court erred when it did not conduct a de novo review of reasonable suspicion and probable cause on appeal pursuant to *Ornelas v. United States*, 517 U.S. 690, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). The Court stated, "the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles."

*Ornelas*, 116 S. Ct. at 1662, citing *Miller*, 474 U.S. at 114, cited in *Guzman v. State*, 955 S.W.2d 85, 87, 1997 Tex. Crim. App. LEXIS 72, *6-8 (Tex. Crim. App. 1997).

WHETHER THE SECOND COURT OF APPEALS ERRED WHEN IT FAILED TO DO A *DE NOVO* REVIEW OF THE MIXED QUESTIONS OF LAW AND OF FACT SURROUNDING WHETHER DEPUTY HAMILTON AND INVESTIGATOR NEGRETE WERE REASONABLE IN FINDING JONES HAD THE AUTHORITY TO CONSENT AND SUBSEQUENTLY, THE REVIEW OF THE SEQUENCE OF EVENTS WHERE THAT CONSENT WAS WITHDRAWN DURING THE SEARCH OF ROGMAD'S LOCKED STORAGE UNIT, AND LOCKED SAFE.

The basic purpose of the Fourth Amendment to the U.S. Constitution is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *See Berger v. New York*, 388 U.S. 41, 53, 87 S. Ct. 1873, 18 L. Ed. 2d 1040 (1967). For this reason, searches conducted without a warrant are generally unreasonable *per se. See Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). An exception to the warrant requirement is a search conducted by consent. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *Welch v. State*, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002). A third party may consent to the search if he possesses equal control over and authority to use the premises being searched. *Maxwell*, 73 S.W.3d at 281. Common authority rests "on the mutual use of property by persons generally having joint access or control for most purposes." *United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S. Ct. 988,

39 L. Ed. 2d 242 (1974) cited in *Valdez v. State*, 336 S.W.3d 330, 335, 2010 Tex. App. LEXIS 9881, *11 (Tex. App. San Antonio 2010).

Even if actual authority does not exist, consent may be validly obtained from an individual with apparent authority over the premises. Apparent authority is judged under an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?

As the United States Supreme Court discussed in *Georgia v. Randolph*, 547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208, 2006 U.S. LEXIS 2498, 74 U.S.L.W. 41776, 19 Fla. L. Weekly Fed. S. 138, reasonableness hinges on widely shared social expectations and commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interest. *Id.* at 753, 756, quoting *Rodriguez*, 497 U.S. at 188, 110 S.Ct. 2793, 111 L.Ed. 2d 148 (1990), or a fellow occupant who shares common authority over property, when the suspect is absent. *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974).

In determining whether an officer was reasonable in finding that a third party had apparent authority to consent, are mixed questions of law and fact which reviewing courts should examine *de novo*. *Limon v. State*, 314 S.W.3d 694, 2010 Tex. App. LEXIS 4565 (Tex. App. Corpus Chrisiti 2010) *pet granted* No. PD-1320-10, 2010 Tex. Crim. App. LEXIS

1619 (Tex. Crim. App. Dec. 8, 2010), rev'd, 340 S.W.3d 753, 2011 Tex. Crim. App. LEXIS 830).

## Analysis

Rogmad states that the Appellate Court could not fully and fairly do a de novo review to evaluate the issue of reasonable suspicion, probable cause, consent to search, the actual or apparent authority of a third party to consent to the search of Rogmad's storage locker and safe, the withdrawal of any consent to search without evaluating all of the evidence that was admitted into the record by the trial court, including a video. If the video evidence did not support the trial court's conclusion, the appellate court should reverse. *Tucker v. State*, 369 S.W.3d 179 (Tex. Crim. App. 2012).

The primary areas of inconsistencies established by the video are 1) whether Jones consent to law enforcement to search Rogmad's locked storage locker was truly "consent?" 2) If it was consent, did Jones have actual or apparent authority to give that consent to law enforcement to search Rogmad's locked storage locker and locked safe; 3) if the consent given by Jones was under actual or apparent authority, what is the timeframe in which Jones withdrew his consent; 4) whether the consent was voluntary; and 5) whether the scope of the consent to search the storage locker included the locked safe?

Consequently, the Second Court of Appeals erred when it failed to do a de novo review of the mixed questions of law and fact surrounding whether Deputy Hamilton and Investigator Negrete were reasonable in finding Jones had the authority to consent to the search of Rogmad's locked storage locker and locked safe.

The Court erred when it failed to review the sequence of where Jones' consent to search Rogmad's locked storage unit and safe were withdrawn by reviewing the in-car video that was admitted at trial as State's Exhibit Number One because 1) the Court recognized that these were issues and referenced them in their opinion. Specifically "Rogmad does not argue that Jones did not consent to a search of the storage unit or the safe, that the scope of the consent that Jones gave to search the storage unit did not include the safe, or that Jones lacked the authority to consent to a search of the storage unit or the safe" (Memorandum Opinion May 14, 2015, p. 3-4).

In order to review these issues under the totality of the circumstances the court must review the on-board video recording admitted at the hearing. By the Court's own Memorandum, it established that there were mixed questions of law and fact regarding whether Jones as a third party had apparent authority to consent to the search of Rogmad's locked storage unit and locker, and whether an officer was reasonable in finding that a third party had apparent authority to consent are mixed questions of law and fact required the reviewing court to examine de novo. *Limon v. State*, 314 S.W.3d 694, 2010 Tex. App.

-21-

LEXIS 4565 (Tex. App. Corpus Chrisiti 2010) *pet granted* No. PD-1320-10, 2010 Tex. Crim. App. LEXIS 1619 (Tex. Crim. App. Dec. 8, 2010), rev'd, 340 S.W.3d 753, 2011 Tex. Crim. App. LEXIS 830).

Rogmad further argues that State's Exhibit Number One was listed in the Master Index (R.R. 1), but it cannot be determined if it was provided to the Court for its review, and Rogmad contends that this piece of evidence is important in reviewing the issues raised under the totality of the circumstances.

Because these issues were paramount to the issue of the withdrawal of consent, and absolutely necessary in review under the totality of the circumstances, Rogmad maintains that the Second Court of Appeals should have conducted a de novo review of the motion to suppress because it contained mixed issues of law and of fact. The foregoing is also paramount to whether or not the evidence was tainted and whether it was attenuated.

Based on the foregoing, Rogmad respectfully requests this court to grant her petition for review or alternatively to remand this matter back to the Second Court of Appeals for a de novo review based on the totality of the circumstances.

Review should be granted.

## PRAYER FOR RELIEF

For the reasons stated above, Ms. Rogmad prays that this Court grant her petition and remand Ms. Rogmad's case back for to the Court of Appeals for a full de novo review of the issues presented.

Respectfully submitted,

LAW OFFICES OF JUDITH MATTERN HEARN
305 S. Rusk Street
P. O. Box 199
Weatherford, Texas 76086
Telephone: (817) 598-1650
Facsimile: (817) 598-0306

By: /s/ *Judith Mattern Hearn*
JUDITH MATTERN HEARN
Attorney for Chester Marion Bell, IV

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing petition for discretionary review has been served on Mr. Eddie Lewellen, Assistant District Attorney of Parker County, Texas by regular mail, and a copy has also been mailed to Ruth Pin Rogmad at her last known address of 2517 Loving Avenue, Ft. Worth, Texas 76164 on this 14th day of August, 2015.

/s/ *Judith Mattern Hearn*
JUDITH MATTERN HEARN

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. Proc. 9.4(e)(I), undersigned counsel certifies that this petition complies with complies with the type-volume limitations of Arial Narrow, 14 point font.

1. Exclusive of the portions exempted by Tex. R. App. Proc. 9.4 (D) this petition contains 3,749 words printed in a proportionally spaced typeface.

2. This brief in printed in a proportionally spaced, Arial Narrow 14 point font in text and Arial Narrow 14 point font in footnotes produced by Microsoft Word 2010 software.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Tex. R. App. Proc. 9.4(j), may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/s Judith Mattern Hearn
Judith Mattern Hearn

APPENDIX A – SECOND COURT OF APPEALS MEMORANDUM OPINION



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-14-00075-CR

RUTH PIN ROGMAD                                                  APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY
TRIAL COURT NO. CR12-0294

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

A jury convicted Appellant Ruth Pin Rogmad of possession of between four ounces and five pounds of marijuana and assessed her punishment at two years' confinement in state jail and a $10,000 fine.  *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(3) (West 2010).  In two points, Rogmad argues that

---

[1]*See* Tex. R. App. P. 47.4.

the trial court erred by denying her motion to suppress evidence and her motion for new trial. We will affirm.

## II. BACKGROUND

On April 25, 2012, law enforcement authorities in Parker County had information that someone was going to drive from a residence to a convenience store to deliver marijuana. Officer Hamilton located the suspect vehicle and initiated a traffic stop after the vehicle failed to come to a complete stop at a stop sign. Pierre Jones, the driver and sole occupant of the vehicle, drove into a storage building facility before stopping. Officer Negrete quickly arrived to assist Officer Hamilton, who smelled the odor of burnt marijuana emanating from Jones's vehicle and asked him for consent to search the vehicle. Jones consented, and Officer Hamilton located a plastic bag in the vehicle's trunk that contained marijuana residue.

Jones told the officers that he was there to put some vehicle parts in his girlfriend's storage unit, so Officer Negrete asked if Jones had a key to the unit. Jones did have a key; Officer Negrete used it to unlock one of the units, but he did not open the unit. Officer Hamilton asked Jones for his consent to search the storage unit, and Jones gave it. Officer Negrete opened the unit and observed "miscellaneous items" inside, including a small safe. Officer Hamilton asked Jones if he had a key to the safe, and Jones said that he did not. Officer Hamilton, however, located a set of keys in the vehicle's center console that appeared to have a safe key on it and handed them to Officer Negrete. Officer

2

Negrete used the key to open the safe and observed multiple plastic baggies containing marijuana inside. Officer Negrete immediately turned to Hamilton and nodded, indicating that he had discovered illegal narcotics. At that point—after Officer Negrete had opened the safe and stood back up—Jones said, "I didn't say you could look in there." Officer Hamilton replied, "I asked you for consent, you gave us consent, and I have it recorded on my in-car video." The officers arrested Jones for possession of marijuana.

While Jones was in jail, he and Rogmad had several telephone conversations that were recorded, during which Rogmad made incriminating statements about the marijuana that was discovered in the safe, and which ultimately led to her arrest and this prosecution.[2] Rogmad moved to suppress the marijuana found in the safe, but the trial court denied the motion. A jury ultimately convicted Rogmad of the charged offense, and this appeal followed.

### III. MOTION TO SUPPRESS

Specifically invoking the protection of the Texas constitution, Rogmad argues in her first point that the trial court erred by denying her motion to suppress because Jones withdrew his consent for the warrantless search "as soon as [he] realized a law enforcement officer had taken his keys and unlocked the safe." Rogmad does not argue that Jones did not consent to a search of the storage unit or the safe, that the scope of the consent that Jones gave to search

---

[2]Jones had also told Officer Hamilton during an interview that the vehicle, the storage unit, and the keys belonged to Rogmad.

the storage unit did not include the safe, or that Jones lacked the authority to consent to a search of the storage unit or the safe. Rogmad contends only "that Mr. Jones' statement that he did not possess a key to the safe (a remark made prior to entry into the safe), coupled with his statements 'No, No, No,' as the officers entered the safe, should constitute *withdrawal* of consent to search, at least to the contents of the safe." [Emphasis added.] The State responds that the contraband was seized during a valid consensual search prior to any alleged withdrawal of consent. We agree with the State.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.). Consent to search is one of the well-

4

established exceptions to the constitutional requirements of both a warrant and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). But when a person voluntarily consents to a search, the officer's authority to perform the search is not without limit. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex. Crim. App. 1996), *overruled on other grounds by Guzman*, 955 S.W.2d at 85. A person may revoke the consent that he has given to search. *See Florida v. Jimeno*, 500 U.S. 248, 252, 111 S. Ct. 1801, 1804 (1991). If a person withdraws his consent before a search is completed, the police cannot continue searching based on the prior consent. *Mason v. Pulliam*, 557 F.2d 426, 429 (5th Cir. 1977). However, when "a suspect does not withdraw his valid consent to a search for illegal substances before they are discovered, the consent remains valid and the substances are admissible as evidence." *United States v. Dyer*, 784 F.2d 812, 816 (7th Cir. 1986). The State bears the burden to show valid consent by clear and convincing evidence. *Best*, 118 S.W.3d at 862.

Officer Hamilton testified at the motion to suppress hearing and at trial that Jones did not withdraw his consent to search the storage unit or the safe before Officer Negrete opened the safe and discovered the marijuana inside. The following exchange occurred at the suppression hearing:

> [State]: Deputy Hamilton, as you, Investigator Negrete, and Mr. Jones were standing outside this closed storage unit, did Mr. Jones indicate to you his consent denial?
>
> [Officer Hamilton]: I'm sorry?
>
> [State]: Denial of consent?

5

[Officer Hamilton]: No, he never did --

[State]: Okay.

[Officer Hamilton]: -- deny consent.

[State]: What about . . . when Investigator Negrete got the key to the storage unit, did Mr. Jones object?

[Officer Hamilton]: No.

[State]: What about when the storage unit was actually unlocked and the door opened, did Mr. Jones object?

[Officer Hamilton]: No, ma'am.

[State]: Was he present in a situation that he could have objected and y'all all could have heard it?

[Officer Hamilton]: Yes, ma'am.

[State]: When Investigator Negrete opened the storage unit and presumably looked around at least briefly, did Mr. Jones object?

[Officer Hamilton]: No, ma'am.

[State]: When . . . Investigator Negrete retrieved the key to the locked box of the safe, did Mr. Jones object?

[Officer Hamilton]: No, ma'am.

[State]: As Investigator Negrete was bending down to unlock the safe that was on the lower part of the storage unit, did Mr. Jones object?

[Officer Hamilton]: No, ma'am.

[State]: As the safe was unlocked -- actually being unlocked, did Mr. Jones object?

[Officer Hamilton]: No ma'am.

6

[State]:  And, actually, did he ever withdraw his consent?

[Officer Hamilton]:  No, ma'am, he did not.

Officer Negrete testified similarly:

[State]:  Okay.  But at any rate, you ended up with a key that you believed was going to unlock the safe?

[Officer Negrete]:  Yes, ma'am.

[State]:  And at this time Mr. Jones was handcuffed?

[Officer Negrete]:  Yes, ma'am.

[State]:  So he didn't hand you the key, did he?

[Officer Negrete]:  No, ma'am.

[State]:  Okay.  But at the same time, Mr. Jones was there, and did he object to you, number one, getting the key from Deputy Hamilton?

[Officer Negrete]:  No, ma'am.

[State]:  Did he object to you taking the key and walking over to the safe?

[Officer Negrete]:  No, ma'am.

[State]:  Did he object to you bending down and sort of addressing or fronting the safe?

[Officer Negrete]:  No, ma'am.

[State]:  Did he object to you as you were opening the safe?

[Officer Negrete]:  No, ma'am.

[State]:  What did you see when you opened the safe?

[Officer Negrete]:  When I opened the safe, I saw multiple plastic baggies containing marijuana.

7

Rogmad argues that Jones effectively withdrew his consent to search the safe when he told the officers that he did not have a key to the safe, but that statement accomplished no such thing; Jones merely advised the officers that he did not possess a particular item. Rogmad argues that Jones withdrew his consent *as* Officer Negrete opened the safe, but the record reveals that Jones did not withdraw his consent until *after* Officer Negrete had opened the safe and had discovered the marijuana. At that point, the withdrawal came too late, at least as to the admissibility of the marijuana at trial. *See Dyer*, 784 F.2d at 816. We hold that the trial court did not err by denying Rogmad's motion to suppress. *See Best*, 118 S.W.3d at 862. Accordingly, we overrule her first point.

## IV. MOTION FOR NEW TRIAL

In her second point, Rogmad argues that the trial court erred by denying her motion for new trial because she was shackled during the first day of trial without the required showing of manifest need.

We review a trial judge's denial of a motion for new trial for an abuse of discretion. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Id.*

The trial court has discretion to order restraints if there is a showing of manifest need or exceptional circumstances. *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991), *cert. denied*, 505 U.S. 1224 (1992). However,

8

Texas courts have consistently held that no harm results from restraining a defendant when the restraints were not visible. *See Bell v. State*, 415 S.W.3d 278, 281–83 (Tex. Crim. App. 2013), *cert. denied*, 134 S. Ct. 1788 (2014); *Canales v. State*, 98 S.W.3d 690, 697–98 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1051 (2003); *Long*, 823 S.W.2d at 283.

The trial court did not order Rogmad to be shackled, nor did Rogmad's own attorney, the prosecutors for the State, or the trial court even notice that Rogmad was shackled on the first day of trial. The issue was first brought to the attention of the trial court in Rogmad's motion for new trial. According to the motion, the paralegal for Rogmad's attorney notified Rogmad's attorney after trial that Rogmad had been shackled on the first day of trial. Rogmad admits that she was shackled because "the bailiff in charge was new to court and not acquainted with proper courtroom procedure." There was no evidence at the hearing on Rogmad's motion for new trial that any members of the jury perceived that Rogmad was shackled, nor was there any evidence that the shackles interfered with Rogmad's ability to communicate with her attorney or somehow diminished the dignity of the judicial process. *See Deck v. Missouri*, 544 U.S. 622, 630–31, 125 S. Ct. 2007, 2013 (2005) (discussing three fundamental legal principles affected when defendant is shackled during trial). Therefore, we hold that the trial court did not abuse its discretion by denying Rogmad's motion for new trial. *See Bell*, 415 S.W.3d at 282 (reasoning that relevant court of criminal appeals cases "demonstrate an appropriate unwillingness to make the factual assumption

9

that the jury perceived a defendant's shackles in the absence of any record support"). We overrule her second point.

## V. Conclusion

Having overruled both of Rogmad's points, we affirm the trial court's judgment.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 14, 2015



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS

CHIEF JUSTICE
  TERRIE LIVINGSTON

JUSTICES
  LEE ANN DAUPHINOT
  ANNE GARDNER
  SUE WALKER
  BILL MEIER
  LEE GABRIEL
  BONNIE SUDDERTH

TIM CURRY CRIMINAL JUSTICE CENTER
401 W. BELKNAP, SUITE 9000
FORT WORTH, TEXAS 76196-0211

TEL: (817) 884-1900

FAX: (817) 884-1932

www.txcourts.gov/2ndcoa

CLERK
  DEBRA SPISAK

CHIEF STAFF ATTORNEY
  LISA M. WEST

GENERAL COUNSEL
  CLARISSA HODGES

May 14, 2015

Don Schnebly
Parker County District Attorney
117 Fort Worth St.
Weatherford, TX 76086
* DELIVERED VIA E-MAIL *

District Clerk, Parker County
117 Fort Worth Highway
Weatherford, TX 76086
* DELIVERED VIA E-MAIL *

Judith Mattern Hearn
Law Offices of Judith Mattern Hearn
222 W. Exchange Avenue
Suite 106
Fort Worth, TX 76164
* DELIVERED VIA E-MAIL *

Hon. David L. Evans
Regional Presiding Judge
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, TX 76196
* DELIVERED VIA E-MAIL *

Hon. Roy Graham Quisenberry III
Judge, 415th District Court, Parker
County
117 Fort Worth Highway
Weatherford, TX 76086
* DELIVERED VIA E-MAIL *

RE:    Court of Appeals Number:    02-14-00075-CR
        Trial Court Case Number:    CR12-0294

Style:    Ruth Pin Rogmad
        v.
        The State of Texas

      Today the Second Court of Appeals issued an opinion and judgment in the above-referenced cause.

      Copies of the opinion and judgment are attached and can also be viewed on our Court's webpage at: http://www.txcourts.gov/2ndcoa.

Respectfully yours,

DEBRA SPISAK, CLERK

Debra Spisak